IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

MARTHA McKENZIE          )
and DAN McKENZIE,        )
                         )
      Plaintiffs,        )          CIVIL ACTION NO.
                         )          2:22cv426-MHT
      v.                 )               (WO)
                         )
AUCTION.COM, et al.,     )
                         )
      Defendants.        )

OPINION AND ORDER

In response to a lawsuit brought by plaintiffs Martha

and Dan McKenzie in state court, defendants Auction.com,

Inc., First American Data Tree, LLC, and First American

Financial Corporation removed the case to federal court.

The McKenzies now ask this court to remand the case to

the state court.  For the reasons set out below, their

motion for remand is denied.

I. BACKGROUND

The McKenzies filed suit against the defendants in

April 2022 in state court, asserting claims of slander

of title, defamation, negligence, and wantonness, and

seeking compensatory, punitive, and injunctive relief. On June 29, 2022, the McKenzies' counsel sent the defendants a demand letter offering to settle all claims for $ 125,000 plus additional nonmonetary relief. Less than a month later, the defendants removed the case to federal court, attaching (among other documents) the complaint and the June 29 demand letter. In response, the McKenzies filed a motion to remand, which has been fully briefed. The court held a videoconference hearing on that motion in September 2022.

## II. DISCUSSION

### A.

Defendants are authorized to remove a case to federal court when subject-matter jurisdiction exists. *See* 28 U.S.C. § 1441(a). Removal may occur "within thirty days after receipt ... of a copy of an ... other paper from which it may first be ascertained that the case is one which is or has become removable." *Id*. § 1446(b)(3). This court has made clear, following guidance from the

Eleventh Circuit Court of Appeals that settlement letters constitute "other paper" within the meaning of § 1446. *See, e.g.*, *McCullough v. Plum Creek Timberlands, L.P.*, 2010 WL 55862, at *3 (M.D. Ala. Jan. 4, 2010) (Thompson, J.); *Bankhead v. Am. Suzuki Motor Corp.*, 529 F. Supp. 2d 1329, 1333 (M.D. Ala. 2008) (Thompson, J.); *see also Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1213 n.62 (11th Cir. 2007). It is undisputed that the defendants timely filed a notice of removal within 30 days of receiving the McKenzies' June 29 settlement letter.

The defendants removed the case based on the existence of diversity-of-citizenship jurisdiction, 28 U.S.C. § 1332. *See* Notice of Removal (Doc. 1) at 2-5. Complete diversity of citizenship exists between the parties and has not been disputed,[1] such that

---

1. Martha and Dan McKenzies are citizens of Alabama. Auction.com, Inc., is a corporation organized under California law with its principal place of business in California and thus a citizen of California. First American Data Tree, LLC's sole member is First American Data Company, LLC; First American Financial Corporation is the sole member of First American Data Company, LLC, and is a corporation organized under the laws of Delaware with its principal place of business in California. Both

3

subject-matter jurisdiction hinges on the amount in controversy. *See* 28 U.S.C. § 1332(a). To be removable, the amount in controversy must "exceed[] the sum or value of $ 75,000, exclusive of interest and costs." *Id.*

When removal is based on diversity jurisdiction, a statutory scheme governs the amount in controversy. In general, "the sum demanded ... in the initial pleading shall be deemed to be the amount in controversy." *Id.* § 1446(c)(2). However, the defendants' "notice of removal may assert the amount in controversy if the initial pleading seeks" either (i) nonmonetary relief or (ii) "a money judgment" in a State where "practice ... permits recovery of damages in excess of the amount demanded." *Id.* § 1446(c)(2)(A). Removal is "proper on the basis of an amount in controversy [so specified in defendants' notice of removal] if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" the

First American Data Tree, LLC, and First American Financial Corporation are thus citizens of Delaware and of California.

4

$ 75,000 threshold for federal diversity jurisdiction. *Id.* § 1446(c)(2)(B).

The McKenzies' initial pleading--that is, their state-court complaint--seeks "nonmonetary relief," including an injunction against defendants, *id.* § 1446(c)(2)(A)(i); *see* Complaint (Doc. 1-2) at 5, and the defendants' removal notice asserts that the "amount in controversy exceeds $ 75,000.00," Notice of Removal (Doc. 1) at 4.[2]  Removal is therefore proper--and remand unwarranted--if the court finds "by the preponderance of the evidence, that the amount in controversy exceeds" $ 75,000.  28 U.S.C. § 1446(c)(2)(B).

### B.

Jurisdiction thus turns on the amount in controversy in the McKenzies' suit.  The Eleventh Circuit has

---

2. While either disjunct at § 1446(c)(2)(A) suffices to trigger the application of § 1446(c)(2)(B), it appears that the instant case satisfies the second disjunct as well.  That is, the McKenzies' initial pleading seeks, in part, a "money judgment" and Alabama practice "permits recovery of damages in excess of the amount demanded." 28 U.S.C. § 1446(c)(2)(A)(ii); *see* Ala. R. Civ. P. 54(c).

detailed the proper standard for the court's analysis, such that "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010). Indeed, "[t]he law does not demand perfect knowledge or depend any less on reasonable inferences and deductions than we all do in everyday life." *Id.* The court need not "suspend reality [n]or shelve common sense in determining whether the face of a complaint, or other document, establishes the jurisdictional amount." *Id.* at 770 (quoting *Roe v. Michelin N. Am., Inc.*, 637 F. Supp. 2d 995, 999 (M.D. Ala. 2009) (Thompson, J.)).

To support removal, "defendants may submit a wide range of evidence in order to satisfy the jurisdictional requirements of removal," so long as "that removal is procedurally proper." *Id.* at 755. Importantly, the court's "analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later." *Id.* at 751.

6

Here, the defendants attached the McKenzies'
state-court complaint and June 29 demand letter to their
notice of removal.  This is thus not a case that contains
"only 'naked pleadings,'" with "no specific factual
details ... and no exhibits other than the complaint[]."
*Id.* at 753.  In filing their notice of removal alongside
the June 29 letter, the defendants properly submitted
"specific factual allegations establishing jurisdiction"
supported by "evidence combined with reasonable
deductions, reasonable inferences, or other reasonable
extrapolations" as to the amount in controversy.  *Id.* at
754; *see* Notice of Removal (Doc. 1) at 4; June 29 Letter
(Doc. 1-3).


C.

To begin, the court considers the total value of the
McKenzies' claims, with reference to both the settlement
demand letter and the underlying state-court complaint.

7

1.

The McKenzies' four-page June 29 demand letter was written by counsel and seeks both money and certain nonmonetary conduct by defendants.  The letter states that the McKenzies "have agreed to accept $ 125,000 plus a retraction that is disseminated in the same manner and method as the original emails" and is "sent out the same number of times as the original email[s]" to settle their suit.  June 29 Letter (Doc. 1-3) at 4.[3]  The letter also expressly provides that the McKenzies "have not spent the money to hire experts to quantify any loss of business or other damages that may be available" to them.  *Id*. Based on this letter, the McKenzies' own valuation of their claims must exceed $ 125,000, insofar as they "request valuable non-cash consideration in addition to

_____

3.    Whereas some settlement demand letters may acknowledge uncertainty or disagreement as to the total value of the plaintiffs' claim, the McKenzies' June 29 letter "shows no such lack of confidence in [their] assessment, thus providing stronger evidence of the amount in controversy." *McCullough v. Plum Creek Timberlands, L.P.*, 2010 WL 55862 at *5 (M.D. Ala. Jan. 4, 2010) (Thompson, J.).

8

the demanded payment," namely a retraction disseminated
according to their specifications.  *McCullough*, 2010 WL
55862 at *5.

Moreover, the letter notes that this offer is made
"in an effort to resolve this issue without further
litigation costs," suggesting that the actual amount at
stake is worth even more than the McKenzies' demand for
$ 125,000 plus additional nonmonetary relief.  June 29
Letter at 4; *see McCullough*, 2010 WL 55862 at *5 (noting
that offers made "with an eye towards avoiding the costs
of continued litigation" suggest the offeror "viewed
[their] offer as a discount").  The benefits of early
settlement are not limited to the financial costs of
litigating that must be excluded from any calculation of
the amount in controversy.  *See* 28 U.S.C. § 1332(a).
Plaintiffs receive benefits from settling a legal dispute
early in the process--for instance, by saving the time
otherwise spent on litigating--and so are incentivized
to settle at that stage for less than what they deem to

be the full value of their claims (even if the financial costs of litigation are not considered).

While the McKenzies suggest that their June 29 letter should be dismissed as puffery and posturing, *see* Pls.' Br. in Support of Remand (Doc. 7) at 9-10, their cursory analysis "does nothing to support or explain this assertion, and the court views it as little more than an effort to avoid federal jurisdiction," *McCullough*, 2010 WL 55862 at *5.

### 2.

Reading the June 29 demand letter in conjunction with the state-court complaint does not displace the McKenzies' valuation of their claim at $ 125,000 plus additional nonmonetary relief.  To be sure, the original complaint contained an *ad damnum* clause specifying that "in no event do the plaintiffs seek more than $ 74,999, exclusive of interest and costs."  Complaint (Doc. 1-2) at 6.  But if the McKenzies intended this clause to limit the amount in controversy below $ 75,000 and preclude

federal subject-matter jurisdiction, several issues arise.

First, the *ad damnum* clause states only that the McKenzies do not "seek" more than $ 74,999. The complaint does not specify that they would each categorically refuse to accept any award above that amount, nor had the plaintiffs furnished any filings to that effect when the defendants removed the case to this court. "It is well settled that a litigant seeking general damages for personal injuries ... may recover an amount in excess of the amount contained in the *ad damnum* clause of the complaint." *Breland v. Ford*, 693 So.2d 393, 397 (Ala. 1996). That is, the McKenzies were not bound by their commitment not to *seek* more than $ 74,999 and could recover well in excess of that amount.

Second, the affidavits filed after removal by Martha McKenzie and (still later) by Dan McKenzie do not cabin the total amount in controversy at the time the case was removed. In their affidavits, the McKenzies each state that they "have never individually claimed" and will not

11

"accept more than [$ 74,999] personally" in the instant case.  Pls.' Br. in Support of Remand (Doc. 7) at 14 (Martha McKenzie); Pls.' Reply in Support of Remand (Doc. 17) at 4 (Dan McKenzie).  But the "jurisdictional facts that support removal must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time." *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000) (internal quotation marks omitted).

Here, the post-removal affidavits do not merely clarify the status quo at the time of removal but instead mark a new and substantive alteration.  There is a clear and important difference between what the McKenzies wrote in their complaint pre-removal (viz. not *seeking* more than $ 74,999) and what they have sworn to post-removal (viz. not *accepting* more than $ 74,999).  As such, the affidavits are not relevant to determining the amount in controversy when the case was removed, either in total or as to the McKenzies individually.

The McKenzies' affidavits are straightforwardly "post-removal waiver[s] of a certain amount of damages in an effort to deprive this court of jurisdiction." *Bankhead*, 529 F. Supp. 2d at 1334. Whatever effect these affidavits limiting recovery may have on the case going forward, they do not diminish the amount in controversy at the time of removal. "Where, as here, 'the plaintiff[s] after removal ... by affidavit ... reduce[] the claim below the requisite amount, this does not deprive the district court of jurisdiction.'" *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938)).

Accordingly, the court finds as a matter of fact and by a preponderance of evidence that the total amount in controversy--across the claims of both Martha McKenzie and Dan McKenzie--considerably exceeded the $ 125,000 requested in their settlement demand letter (which came in a discounted posture and included nonmonetary demands worth additional value) at the time of removal.

13

D.

Although their complaint is strikingly ambiguous in this regard, the McKenzies insist that they brought two distinct sets of claims against the defendants: one by Martha McKenzie and one by Dan McKenzie. *See* Sept. 21, 2022, Hearing R.D. Tr. at 3 (Pls.' Counsel: "At the time of removal there is no question that the plaintiffs had separate claims and that the plaintiffs have separate damages.").[4]   Taking the plaintiffs at their word, the court will analyze the amount-in-controversy requirement for each in turn.

The McKenzies have never indicated that they are due respective damages in equal amount.   And indeed, they have provided several reasons to think that they are

_____

4. Nothing on the face of the complaint indicates that Martha and Dan McKenzie brought separate sets of claims.   Indeed, the *ad damnum* clause providing that "in no event do the Plaintiffs seek more than $ 74,999" can be fairly read as the McKenzies jointly seeking an amount of $ 74,999 or less--rather than them *each* seeking such an amount, as they now represent.   *See* Complaint (Doc. 1-2) at 6; Sept. 21, 2022, Hearing R.D. Tr. at 3 (noting per the McKenzies' counsel that they have "separate claims" and "separate damages" but conceding that "that was not pled clearly in the complaint").

14

not--and specifically that Martha McKenzie's damages are likely to be considerably more than are Dan McKenzie's. *See* Pls.' Br. in Support of Remand (Doc. 7) at 12 (noting that the June 29 demand letter "specifically references actions taken by Martha McKenzie independent of Dan McKenzie" and emphasizing their "separate damages").

First, Martha McKenzie is the sole owner of the property in question. *See id.* ("Martha McKenzie has distinct damages. The most obvious distinguishing fact is that the home in question is in Plaintiff Martha McKenzie's name only."); Sept. 21, 2022, Hearing R.D. Tr. at 3 (Pls.' Counsel: "While that was not pled clearly in the complaint ... it would have been made clear that the plaintiff Martha McKenzie is the sole owner of the house. That is not an argument by the plaintiff. That is a fact.").

Second, only Martha McKenzie's name was included in the publications at issue in this case. *See id.* at 4 (Pls.' Counsel: "[Mr. McKenzie's] name was not on the publications that were disseminated by the defendants.").

Third, certain claims are available only to Martha McKenzie. The McKenzies' complaint alleges slander of title. *See* Complaint (Doc. 1-2) at 4. In Alabama, a slander-of-title claim requires "[o]wnership of the property by [the] plaintiff." *Folmar v. Empire Fire & Marine Ins. Co.*, 856 So.2d 807, 809 (Ala. 2003) (internal quotation marks omitted); *see* Ala. Code § 6-5-211; Sept. 21, 2022 Hearing R.D. Tr. at 4 (Pls.' Counsel: "[O]nly Mrs. McKenzie owns the house, [and] at all times relevant hereto it was solely Mrs. McKenzie's house, and therefore she would have damages that would be separate.").[5]  And again, Martha McKenzie is the sole owner of the house--and Dan McKenzie expressly abandoned any damages predicated on her ownership. *See id.* at 10 (disclaiming permanently per the McKenzies' counsel "any theory for

_____

5. In addition, the negligence claim in the McKenzies' complaint is pled based on assertions that the "Defendants published false statements about the Plaintiff" and "recklessly failed to remove the false statements about the Plaintiff from their publication." Complaint (Doc. 1-2) at 5. The court notes again that the complaint alleges that Martha McKenzie's name alone appeared in the defendants' publications. *See id.* at 3.

Mr. McKenzie's claims for damages [for him] on the basis that his wife owned the house").

Fourth, counsel for the McKenzies proffered theories as to Dan McKenzie's separate damages at the September 2022 videoconference, including for "mental anguish and embarrassment," "that he was living in the property," and that he "could claim some effect on his business interest and ... some effect on other personal things that were said to him that were not said to his wife after the publication of this adverse information." *Id.* at 5, 8-9. To the extent these theories have merit, several also apply, with varying strengths, to Martha McKenzie. For example, she too alleges mental anguish and embarrassment, *see* Complaint (Doc. 1-2) at 3 ("[T]hey have been humiliated, embarrassed, and exposed to insult and contumely. They have suffered mental upset, anguish, and have felt threatened."), and also lived in the house in question, *see id.* This further supports the conclusion that Martha McKenzie's stake in the lawsuit concerns an amount much higher than does Dan McKenzie's.

The above factors are relevant to properly allocating the full value of the relief sought in the complaint--worth considerably more than $ 125,000 across compensatory damages (including for pain and suffering), punitive damages, an injunction, and any further relief deemed proper--as between Martha and Dan McKenzie. Accordingly, the court finds that significantly more than half of the full value of the McKenzies' suit should be attributed to Martha McKenzie.

The court thus finds as a matter of fact and by a preponderance of evidence that the amount in controversy as to Martha McKenzie's claims against the defendants exceeded $ 75,000 at the time of removal. Because the amount-in-controversy threshold is satisfied as to Martha McKenzie, the court has subject-matter jurisdiction over her claims.

### E.

Because Martha McKenzie's claim meets the $ 75,000 threshold, it is subject to the court's diversity

jurisdiction.   As a result, the court is authorized to exercise supplemental jurisdiction over Dan McKenzie's claim--which is part of the "same case or controversy"--regardless of its monetary value.   28 U.S.C. § 1367(a).

The Supreme Court has stated: "[W]here the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, [28 U.S.C.] § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005).

And the Eleventh Circuit has echoed this application of supplemental jurisdiction:  "When there are multiple plaintiffs in an action, as there are here, federal subject matter jurisdiction exists over all the

plaintiffs' claims arising from the same case or controversy if just one plaintiff meets the jurisdictional amount." *Hickerson v. Enter. Leasing Co., LLC*, 818 Fed. App'x 880, 883 (11th Cir. 2020). Dan McKenzie's claims are thus properly before the court and subject to its jurisdiction.

* * *

Accordingly, it is ORDERED that the motion by plaintiffs Martha McKenzie and Dan McKenzie to remand the instant case to state court (Doc. 6) is denied.

DONE, this the 8th day of December, 2022.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE